JS-6

1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11
12
13

In re
Fernando Cabrera-Mejia, et al.,

                Debtor.

14
15

PITE DUNCAN, LLP,

                Appellant,

16

      v.

17
18

UNITED STATES BANKRUPTCY
COURT,

19
20

              Interested Party.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 09-0631 DMG

**ORDER RE BANKRUPTCY APPEAL**

Bankruptcy No.:  LA 08-13505 SB

21
22
23
24
25

      This matter is before the Court on an appeal from the Bankruptcy Court.  The Court deems this matter suitable for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 8012-7.  For the reasons set forth below, the decision of the Bankruptcy Court is REVERSED.

26
27
28

\\
\\
\\

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Bankruptcy Court's Practice and Procedure**

In early 2008, due to the state of the real estate and mortgage markets at that time, the Bankruptcy Court, the Honorable Samuel Bufford presiding, notified all counsel and parties that relief-from-stay moving parties could no longer present a copy of a promissory note to establish their rights to enforce the note as real parties in interest. (Appellant's Request for Judicial Notice ("RJN"), Ex. A).[1]  Specifically, on January 9, 2008, the Bankruptcy Court issued the following notice to all counsel and parties filing relief from stay motions:

> Beginning January 22, 2008 (and until further notice), Judge Bufford will require that a moving party on a relief from stay motion based on a promissory note bring to court for inspection the original promissory note.  (Note:  do not file the note with the court—bring it to the hearing.)  Production of the note will be excused only under circumstances such as those provided in Evidence Code Rule 1004 or Cal. Comm. Code § 3301 (as shown by competent evidence).

---

[1] Appellant requests that this Court take judicial notice of 15 documents (RJN, Exs. A through O), which include the Bankruptcy Court's January 9, 2008 notice to counsel and parties regarding relief from stay motion procedures; motions and withdrawals for relief from automatic stays, filed and received by the Bankruptcy Court; Bankruptcy Court orders; PACER dockets for cases pending before the Bankruptcy Court; the Bankruptcy Court's hearing calendars; and a summary of Appellant's prior motions for relief, filed with the Bankruptcy Court.

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  All Exhibits in the RJN are either (1) copies of documents issued or received by the Bankruptcy Court for the Central District of California; or (2) summaries of documents issued or received by the Bankruptcy Court for the Central District of California, which in turn could easily be verified through the public record.  The Court therefore grants Appellant's RJN with respect to Exhibits A through O.

> This requirement will apply because developments in the secondary market for mortgages and other security interests cause the court to lack confidence that presenting a copy of a promissory note is sufficient to show that movant has a right to enforce the note or that it qualifies as a real party of interest . . . .

(*Id.*)

The Bankruptcy Court expressed concern about the increased number of foundational defects in declarations filed in support of real estate relief-from-stay motions.  (Sanctions Order, Excerpts of Record ("E.R.") 1.26 at 2.)  The Bankruptcy Court found that such declarations were often insufficient to establish declarants' competency to testify and to authenticate the business records on which the declarants relied in their testimony.  (*Id.*) (citing *In re Vin Vinhnee*, 336 B.R. 437, 444 (9th Cir. B.A.P. 2005) (setting forth requirements to admit such statements under the hearsay exception and to authenticate business records)).  As a result, Judge Bufford began to exercise his discretion under Local Bankruptcy Rule ("LBR") 9013-1(i)(1),[2] to require declarants who submitted declarations in conjunction with real estate relief-from-stay motions to appear and testify at the relief-from-stay hearings.  (*Id.*)  Unlike the notice to all parties and counsel regarding the new promissory note requirements, however, Judge

---

[2] LBR 9013-1(i) provides:

> Factual contentions involved in any motion, opposition or other response to a motion, or reply papers, must be presented, heard, and determined upon declarations and other written evidence. . . .
>
> (1) The court may, at its discretion, in addition to or in lieu of declaratory evidence, require or allow oral examination of any declarant or any other witness in accordance with FRBP 9017.  When the court intends to take such testimony, it will give the parties 2 days notice of its intention, if possible, or may grant such a continuance as it may deem appropriate.

Bankr. C.D. Cal. R. 9013-1(i).

-3-

Bufford did not issue a similar notice or standing order to notify all parties and counsel of this new requirement.

**B.**     **The Underlying Chapter 7 Bankruptcy Cases**

From February 2006 through March 2009, Appellant served as counsel of record for over 90 cases pending before Judge Bufford.  (RJN, Ex. B.)  On January 10, 2008—one day after receiving Judge Bufford's January 9, 2008 notice—Appellant sent a memorandum to its clients with cases pending before Judge Bufford, informing them of Judge Bufford's new requirement that relief-from-stay moving parties present original promissory notes at hearings.  (Declaration of David McAllister ("McAllister Decl."), E.R. 1.14 at Ex. A.)

Between December 21, 2007 and April 8, 2008, Appellant filed 20 relief-from-stay motions on behalf of home mortgage creditor clients ("first group") before Judge Bufford.  (Sanctions Order, E.R. 1.26 at 2.)  The Bankruptcy Court issued Orders for Declarant to Testify ("ODT") for each of the motions in the first group, requiring the declarants to appear and testify at the respective relief-from-stay hearings.  (*Id.*)  Appellant ultimately withdrew each of the motions from the first group.  (*Id.*)  Appellant became increasingly aware of Judge Bufford's practice to require declarants to testify at relief-from-stay hearings, and on March 6, 2008, Appellant sent another memorandum to its clients to (1) remind the clients of Judge Bufford's requirement regarding original promissory notes, and (2) inform them of Judge Bufford's new ODT practice, requiring declarants to testify at relief-from-stay hearings.  (McAllister Decl., E.R. 1.14 at Ex. B.)

On April 3, 2008, the Bankruptcy Court granted a relief-from-stay motion filed by Appellant—in connection with *In re Edwards*, Bankruptcy Case No. 08-11531—without requiring the declarant to testify at the hearing.  (Tr. of July 9 Hr'g re Sanctions, E.R. 1.25 at 3.)  This led Appellant to believe that Judge Bufford did not have a blanket practice of issuing ODTs for relief-from-stay hearings.  (*Id.*)  During the Order to Show Cause Hearing discussed *infra*, Appellant notes that, in hindsight, it realized that the Bankruptcy Court granted the relief-from-stay motion in *In re Edwards* without declarant

testimony because the case involved personal property, not real property, and therefore the motion did not raise the same concerns that led Judge Bufford to issue OTDs for real estate relief-from-stay hearings.  (*Id*. at 3–4.)

Between April 1 and May 6, 2008—after the Bankruptcy Court granted the relief-from-stay motion in *In re Edwards*—Appellant filed 21 additional relief-from-stay motions on behalf of home mortgage creditor clients ("second group") before Judge Bufford; this second group of motions is the subject of the Sanctions Order and the instant appeal.  (Sanctions Order, E.R. 1.26 at 2.)  The Bankruptcy Court subsequently issued ODTs for each of the 21 motions in the second group, requiring the declarants to appear and testify at the respective relief-from-stay hearings.  (*Id*. at 2.)  At this point, it became clear to Appellant that Judge Bufford's ODT practice was essentially a blanket requirement for all relief-from-stay motions filed in his court (Appellant's Op. Br. at 7), and beginning April 30, 2008, Appellant sent notifications to its clients, informing them that all relief-from-stay motions filed before Judge Bufford would require declarant appearance and testimony.  (McAllister Decl., E.R. 1.14 at Ex. D.)    Additionally, Appellant implemented new internal procedures, requiring clients to provide written confirmation of declarants' ability to appear and testify at the relief-from-stay hearings before the motions would be filed.  (McAllister Decl., E.R. 1.14 at Ex. E.)

Appellant requested continuances for several second-group hearings in order to allow out-of-state declarants to have additional time to make travel arrangements. (Sanctions Order, E.R. 1.26 at 2.)  After further preparing its clients for the relief-from-stay hearings, however, Appellant determined that it could no longer recommend to its clients that they proceed with the motions due to the additional travel costs, attorneys' fees, and evidentiary requirements, especially when weighed against the anticipated termination of the stays by operation of law.  (Tr. of July 9 Hr'g re Sanctions, E.R. 1.25 at 6–7.)  Once Appellant's clients fully realized Judge Bufford's stringent electronic

business records authentication standard under *In re Vin Vinhnee*,[3] they had a greater appreciation for the additional witnesses and associated costs required to proceed with the hearings.  (*Id.* at 9–10.)  Specifically, the clients would incur travel, lodging, and lost productivity costs in sending not just declarants but also representatives from their respective information technology departments, to testify at the hearings.  (*Id.*)

As a result, the clients instructed Appellant to withdraw 19 of the 21 motions from the second group.  (Sanctions Order, E.R. 1.26 at 2.).  Appellant's clients assert they made a business decision—that proceeding to the hearings was not in their best economic interest—in withdrawing the motions prior to the hearings, and therefore they instructed Appellant to withdraw their respective motions.  (Tr. of July 8 Hr'g re Sanctions, E.R. 1.24 at 7–12, 15–19, 21–23, 43–45.)  The two motions that proceeded to a hearing were ultimately denied.  (Sanctions Order, E.R. 1.26 at 2.)

## C.   **The Bankruptcy Court's Order To Show Cause**

On June 5, 2008, the Bankruptcy Court issued an Amended Order to Show Cause ("OSC") to Appellant and its clients:

> YOU ARE HEREBY ORDERED TO APPEAR before this court on July 8, 2008 at 11:00 a.m. and to show cause, if any you have, why sanctions should not be imposed on you in the amount of $5,000 for each of the above cases for filing relief from stay motions, as to which you were party or counsel,

---

[3] Judge Bufford relied on the electronic business records authentication standard set forth in *In re Vin Vinhnee*, 336 B.R. 437 (9th Cir. B.A.P. 2005).  In general, electronic business records must be authenticated or identified "as a condition precedent to admissibility . . . by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Ev. 901(a).  The *In re Vin Vinhnee* standard requires a party to provide the following evidence to properly authenticate an electronic business record:  (1) the type of particular computer equipment and programs used; (2) how access to the pertinent database is controlled; (3) how access to the specific program is controlled; (4) how changes in the database are logged or recorded; and (5) how the structure and implementation of backup systems and audit procedures assure the continuing integrity of the database.  336 B.R. at 444–45.  Each of the aforementioned considerations is "pertinent to the question of whether [electronic business] records have been changed since their creation."  *Id.* at 445.

with no intent to proceed to a hearing on the merits. . . . [4]  Such
lack of intent appears from the failure to produce a witness, as
required by Local Rule 9013-1(a)(13)(A)[5] and court orders
issued pursuant thereto in each of these cases, and the
subsequent withdrawal (or attempted withdrawal) of each
motion before or at the hearing on the merits.

This Amended Order is based on the court's inherent
authority to impose sanctions before the court, 11 U.S.C. § 105,
28 U.S.C. § 1927 and Fed. R. Bankr. P. 9011(b)(1) and (3).

(Am. OSC, E.R. Ex. 1.7 at 4.)[6]

On June 24, 2008, Appellant filed a response to the OSC, together with 13 declarations from the clients associated with the relief-from-stay motions. (Sanctions Order, E.R. Ex 1.26 at 3.)  The Bankruptcy Court characterized the declarations as attempting to establish that (1) the declarants were competent to testify as to the matters set forth in the relief-from-stay motions, and (2) the declarants did in fact intend to prosecute the relief-from-stay motions on the merits.  (*Id*.)  The Bankruptcy Court ultimately found that none of the declarations were sufficient to accomplish either of the two aforementioned objectives.  (*Id*.)  Appellant, on the other hand, characterized the declarations as an attempt to establish that each client fully intended to prosecute their

---

[4] Appellant emphasizes that the OSC exclusively addressed Appellant's filing of the relief-from-stay motions with no intent to proceed on the merits, not mentioning the substance of the motions or lack of any evidentiary support.  (Appellant's Op. Br. at 10.)

[5] The Bankruptcy Court cited Local Rule 9013-1(a)(13)(A), but Local Rule 9013-1 does not have a sub-section (13).  The Court presumes the Bankruptcy Court intended to cite Local Rule 9013-1(i), which states, "The court may . . . require or allow oral examination of any declarant or any other witness in accordance with FRBP 9017."  Bankr. C.D. Cal. R. 9013-1(i)

[6] The Bankruptcy Court directed the Amended OSC equally to Appellant and its clients. (Sanctions Order, E.R. Ex. 1.26 at 3.)  At the OSC hearing, however, the Bankruptcy Court discharged the OSC as to Appellant's clients for lack of sufficient evidence that the clients acted improperly.  (*Id.*)

-7-

respective relief-from-stay motions at the time they were filed—the sole issue the Bankruptcy Court raised in the OSC—and not to establish the merits of the underlying relief-from-stay motion declarations.  (Appellant's Op. Br. at 11.)

The Bankruptcy Court ordered each declarant who submitted a declaration in support of Appellant's OSC response to appear and testify at the July 8, 2008, OSC hearing.  (Sanctions Order, E.R. Ex 1.26 at 3.)

**D.   The July 8 and 9, 2008, Order To Show Cause Hearing**

Each of the 13 declarants who submitted a declaration in support of Appellant's OSC response appeared to testify at the July 8, 2008, OSC hearing.  (*Id*.)  Only four declarants ultimately testified before the Bankruptcy Court.

William Haughton, Kristy Wagner, and Norman Shaw were the first three witnesses to testify.  (Tr. of July 8 Hr'g re Sanctions, E.R. 1.24 at 3, 16, 26.)  Each witness was an authorized representative for a moving party in an underlying relief-from-stay motion.  (*Id*. at 3–4, 6–7, 16, 27.)  Each witness testified to the following:  at the time the underlying relief-from-stay motions were filed, the moving parties intended to proceed to the hearings on the motions; they ultimately decided to withdraw the motions upon determining that the cost in sending up to four employees to testify at the hearing outweighed the benefit in proceeding with the hearing; and thereafter they instructed Appellant to withdraw their respective motions.  (*Id*. at 7–9, 16–18, 27–28.)

After the first three witnesses testified, Appellant offered to the Bankruptcy Court a stipulation that each of the remaining declarants at the OSC hearing would testify that Appellant advised the clients of the Bankruptcy Court's frequent and ongoing ODT practice and that the clients withdrew their relief-from-stay motions on the advice of Appellant.  (*Id*. at 39.)  As a final offer of proof, Kim Miller testified.  (*Id*. 42–43.)  Ms. Miller testified that she is the Vice President of Wells Fargo, the moving party for two of the underlying relief-from-stay motions, and she was also the declarant for those relief-from-stay motions.  (*Id*.)  She further testified that at the time the relief-from-stay motions were filed, Wells Fargo intended to prosecute the motions, and she had made

-8-

arrangements to travel to Los Angeles for the hearing.  (*Id*. at 43–44.)  After Ms. Miller and other Wells Fargo representatives conferred with Appellant regarding the Bankruptcy Court's ODT, and Wells Fargo learned that it would definitely have to send additional witnesses to the hearing to authenticate the electronic business records, Wells Fargo instructed Appellant to withdraw the motion on the grounds that proceeding with the motion was no longer cost effective.  (*Id*. at 44–45.)

The Bankruptcy Court then accepted Appellant's offer of proof as to what the remaining declarant-witnesses would testify.  (*Id*. at 47.)  The Bankruptcy Court heard testimony from attorneys David McAllister and Steven Pite, representatives for Appellant.  Appellant's representatives testified and re-affirmed that it was not their intent to submit frivolous motions, and when they filed the second group of motions—after the Bankruptcy Court granted the *In re Edwards* relief-from-stay motion without declarant testimony—they believed, albeit incorrectly, that the Bankruptcy Court had relaxed its ODT practice.  (Tr. of July 9 Hr'g re Sanctions, E.R. 1.25 at 1–2.)  They further testified that after Appellant filed the second group of motions and received ODTs for each of them, Appellant realized the Bankruptcy Court's ODT practice was a blanket one, advising its clients accordingly and changing its own internal policies to insure full compliance with the Bankruptcy Court's procedures for future relief-from-stay filings.  (*Id*. at 4–5.)  At the close of the OSC hearing, the Bankruptcy Court appeared to accept Appellant's explanation for the filing and withdrawal of the second group of motions:

> [A]fter the hearings yesterday . . . [this situation] is quite different from what it was when I was looking at 40-some motions that had been filed and withdrawn with no explanation. And now we have an explanation and this suggests that the Court should take a different view of what has happened.

(*Id*. at 19.)  The Bankruptcy Court then took the matter under submission.  (*Id*.)

//
//

1    **E.**     **Motions Filed Post-OSC Hearing**

2          In September 2008, while the sanctions matter was still pending, Appellant filed

3    two real estate relief-from-stay motions on behalf of creditor clients.  First, Appellant

4    filed a relief-from-stay motion on behalf of a creditor-client in *In re Johnson*, Bankruptcy

5    Case No. 2:08-bk-20936.  (RJN, Ex. L.)  Pursuant to LBR 9013-1(b)(2),[7] Appellant

6    scheduled the motion hearing before Honorable Barry Russell.  (*Id.*)  After filing the

7    motion, Appellant learned that the case had been re-assigned to Judge Bufford.  (*Id.*)

8    Shortly thereafter, Judge Bufford issued an ODT for the relief-from-stay motion hearing.

9    (RJN, Ex. K.)  Facing the same concerns as it did with the first and second group of

10   motions, the client advised Appellant to withdraw the motion; at the client's request

11   Appellant filed a notice of withdrawal and then personally appeared at the hearing to

12   explain the case re-assignment circumstances and the withdrawal.  (Tr. of Oct. 7 Hr'g,

13   E.R. Ex. 22.6 at 1.)

14          Second, Appellant represented a creditor-client in *In re Autera*, Bankruptcy Case

15   No. 2:08-bk-12506, which was originally a Chapter 13 case and assigned to the

16   Honorable Ellen Carroll.  (RJN, Ex. G.)  Judge Carroll ordered *In re Autera* to be

17   converted to a Chapter 7 case, (RJN, Ex. F), and the case was then re-assigned to Judge

18   Bufford.  (RJN, Ex. E.)  Before receiving notice of the re-assignment, Appellant filed a

19   relief-from-stay motion hearing with Judge Carroll.  (RJN, Ex. E.)  Upon learning that the

20   case was re-assigned to Judge Bufford—after Judge Bufford issued an ODT for the

21   relief-from-stay motion hearing—Appellant filed a notice of withdrawal (RJN, Ex. I.),

22   and again personally appeared at the scheduled hearing to explain the case re-assignment

23   circumstances and the withdrawal.  (Tr. of Oct. 21 Hr'g, E.R. Ex. 21.6.)

24   //

25

26          [7] Local Bankruptcy Rule 9013-1(b)(2) states:  "A party must self-set a motion for hearing at a

27   date and time permitted on the judge's motion calendar in accordance with the judge's self-set

28   calendaring instructions."  Bankr. C.D. Cal. R. 9013-1(b)(2).

**F.      The Bankruptcy Court's Sanctions Order**

On December 23, 2008, Bankruptcy Court issued the Sanctions Order at issue:

> If a court finds that a motion . . . is filed in the context of a persistent pattern of clearly abusive litigation activity, it will be deemed to have been filed for an improper purpose.  Pite's filing the twenty-one motions in the second group, with full knowledge of this court's evidentiary requirements, and subsequently withdrawing almost all of the motions once ordered to comply with these requirements, constituted abusive litigation activity.  Accordingly, the court finds that the second group of motions was filed for an improper purpose in violation of Rule 9011.
>
>                    *              *              *
>
> [T]he live witness testimony of the declarants at the OSC hearing confirmed that the [underlying relief-from-stay] motions lacked adequate evidentiary support at the time of filing. . . .   In consequence, the court finds that none of the twenty-one motions in the second group was supported by admissible evidence.    Filing a motion without adequate evidentiary support is a violation of Rule 9011(b)(3), and justifies the imposition of sanctions.

(Sanctions Order, E.R. Ex 1.26 at 6–7.)  With respect to its 11 U.S.C. § 105(a) and inherent sanction authority, the Bankruptcy Court found as follows:

> The Court finds that Pite knowingly or recklessly filed motions containing inadequate evidentiary support.  Further, it filed motions with the improper purposes of delaying and increasing the costs of litigation.  In addition to causing detriment to Pite's

-11-

own clients, Pite's filings unnecessarily drained the court's time and resources.  Thus, Pite filed the motions in bad faith.

Thus, pursuant to § 105(a), the court has the inherent power to exercise authority where necessary to protect the integrity of the bankruptcy process.  Accordingly, sanctions in this case are supported by § 105(a) and the court's inherent power, as well as Rule 9011.

(*Id.* at 7–8.)

The Bankruptcy Court thereupon imposed sanctions in the amount of $1,000 for each motion filed after April 1, 2008, for a total of $21,000.  (*Id.* at 1.)

## II.  **STANDARD OF REVIEW**

A district court reviews a bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code *de novo*.  *Greene v. Savage* (*In re Greene*), 583 F.3d 614, 618 (9th Cir. 2009) (citing *Salazar v. McDonald* (*In re Salazar*), 430 F.3d 992, 994 (9th Cir. 2005)).  Factual findings are reviewed for clear error.  The Court must accept the bankruptcy court's factual findings unless, upon review, the Court is left with the definite and firm conviction that the bankruptcy judge has committed a mistake.  *Id.* (citing *Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004)).

A reviewing court will not disturb the bankruptcy court's entry of sanctions unless the bankruptcy court abused its discretion.  *See In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 461 (9th Cir. 2010) (citing *Higgins v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 705 (9th Cir. 2004)).  A bankruptcy court abuses its discretion if its decision is based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Holgate v. Baldwin*, 425 F.3d 671, 675 (9th Cir. 2005) (citing *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003)).

//

# III. **DISCUSSION**

The Bankruptcy Court issued sanctions against Appellant pursuant to Rule 9011(b)(1) and (3), 11 U.S.C. § 105(a), and its inherent sanctions authority. Appellant contends that the Sanctions Order should be reversed because the Bankruptcy Court's findings of fact to support the Sanctions Order were clearly erroneous. This Court agrees.

## A.   **The Bankruptcy Court's Authority To Issue Sanctions**

A bankruptcy court has the express power to impose sanctions pursuant to Fed. R. Bankr. P. ("FRBP") 9011 and 11 U.S.C. § 105(a). *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 283–84 (9th Cir. 1996). A bankruptcy court, like an Article III court, has inherent sanction authority. *Id.* at 284; *see also In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir.), *cert. denied*, 130 S.Ct. 739, 175 L.Ed.2d 515 (2009).

### 1.   **The Bankruptcy Courts Abused Its Discretion In Issuing Sanctions Pursuant to FRBP 9011**

FRBP 9011 requires parties and their attorneys to ensure papers filed before a bankruptcy court are done so for proper purposes and with sufficient evidentiary support:

> (b) Representations to the court. By presenting to the court a . . . written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—
>
> (1) it is not being presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increases in the cost of litigation;
>
> \*     \*     \*
>
> (3) the allegations and other factual contentions have evidentiary support. . . .

-13-

Fed. R. Bankr. P. 9011(b)(1)–(3).  A bankruptcy court may impose sanctions on its own initiative, "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  Fed. R. Bankr. P. 9011(c)(2).  It also may impose sanctions "on litigants and attorneys who file pleadings and papers" that are either for an improper purpose or are frivolous.  *In re Marsch*, 36 F.3d 825, 829 (9th Cir. 1994).  The court considers "frivolousness and improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other."  *In re Silberkraus*, 336 F.3d 864, 870 (9th Cir. 2003) (citing *In re March*, 36 F.3d at 830)).  The inquiry into improper purpose and frivolousness is an objective one.  *In re Grantham Bros*., 922 F.2d 1438, 1441 (9th Cir. 1991).  The objective standard considers whether the attorney acted as would a reasonably "competent attorney admitted to practice before the court."  *Id*. (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829–30 (9th Cir.1986)).

When a bankruptcy court imposes sanctions on its own initiative—as opposed to "the situation in which an opposing party moves for Rule [90]11 sanctions—there is no 'safe harbor' in the Rule allowing lawyers to correct or withdraw their challenged filings."  *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1116–17 (9th Cir. 2001).[8]  In this regard, *sua sponte* sanctions should "be imposed only in situations that

---

[8] FRBP 9011(c)(1)(A) states:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly

are akin to contempt of court." *Id*. at 1116 (quoting *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir.1998)).  As discussed *infra*, "[t]he standard for finding a party in civil contempt is well settled:  The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.  The burden then shifts to the contemnors to demonstrate why they were unable to comply." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (quoting *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

### a.   Appellant Did Not File The Second Group Of Relief-From-Stay Motions For An Improper Purpose

As a preliminary matter, the Court finds a discrepancy between the Bankruptcy Court's OSC and its subsequent Sanctions Order.  The OSC ordered Appellant only to show cause why sanctions should not be imposed for its filing of the 21 relief-from-stay motions "with no intent to proceed to a hearing on the merits."  (Am. OSC, E.R. Ex. 1.7 at 4.)  As such, Appellant reasonably limited its response to the OSC to showing that it did in fact file the second group of motions with intent to proceed on the merits. (Sanctions Order, E.R. Ex 1.26 at 3; Tr. of July 8 Hr'g re Sanctions, E.R. 1.24 at 30–33.) During the OSC hearing and in the Sanctions Order, however, the Bankruptcy Court addressed not only Appellant's intent to proceed on the merits but also its alleged failure to make a reasonable inquiry into the likelihood of success of the underlying relief-from-stay motions.

FRBP 9011 provides examples of improper purpose, which include "to harass or to cause unnecessary delay or needless increases in the cost of litigation."  Fed. R. Bankr. P. 9011(b)(3).  A court "may infer the purpose of filing a motion from its consequences such as 'creating a persistent pattern of abusive litigation.'"  (Sanctions Order, E.R. Ex

---

responsible for violations committed by its partners, associates, and employees.
Fed. R. Bankr. P. 9011(c)(1)(A).

1.26 at 6 (citing *Aetna Life. Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.3d 1470, 1476 (9th Cir. 1988).)  Relying on this authority, the Bankruptcy Court concluded that Appellant displayed a "pattern of abusive litigation activity" in its "repeatedly filing and withdrawing (or attempting to withdraw) motions with no intent to proceed to a hearing on the merits." (*Id.*)  Judge Bufford found that the 20 motions filed in the first group—for which the court issued an ODT—put Appellant on notice of the Bankruptcy Court's relief-from-stay procedural requirements, and that Appellant failed to make any reasonable inquiry into the likelihood of the success of the second group of motions until after the court issued ODTs in connection with each motion. (*Id.*)  Judge Bufford then concluded that Appellant filed the second group of motions with an improper purpose: "[Appellant's] filing the twenty-one motions in the second group, with full knowledge of this court's evidentiary requirements, and subsequently withdrawing almost all of the motions once ordered to comply with these requirements, constituted abusive litigation activity. (*Id.* at 7.)

Appellant argues that the Bankruptcy Court clearly erred in finding that Appellant filed the second group of motions without intent to proceed to a hearing on the merits and that it failed to make a reasonable inquiry into the likelihood of the success of the motions. (Appellant's Op. Br. at 16.)  Thus, the underlying issue is whether under similar circumstances, (1) a competent attorney would file 21 relief-from-stay motions with intent to proceed on the merits and (2) in good faith believe that the court would not issue ODTs for each motion *after* it issued ODTs for each motion in a previously filed group of relief-from stay motions.  Under the circumstances of this case, the Court finds in the affirmative on both counts.

The evidence in the record shows that, at the time Appellant filed the second group of motions, Appellant and its clients intended to proceed with the motions on the merits. Appellant submitted declarations from each of its clients, in opposition to the OSC, attesting that they fully intended to prosecute their respective relief-from-stay motions at the time of filing and that they withdrew the motions only after the Bankruptcy Court

issued the ODTs and it was no longer cost effective to proceed.  (Client Declarations, E.R. Exs. 1.8–1.19, 1.21, 1.23.)  All of the declarants appeared at the OSC hearing, and four declarants testified as to the contents of their declarations.  (Tr. of July 8 Hr'g re Sanctions, E.R. 1.24 at 3–12, 16–19, 26–28, 29, 42–45.)  The Court then accepted Appellant's offer of proof that the remaining declarants' testimony would be to the same effect.  (*Id*. at 47.)  As such, Appellant provided ample evidence—by way of declarations and witness testimony—that it filed each of the motions with intent to proceed on the merits.

Further, Judge Bufford's relief-from-stay evidentiary and procedural requirements were not as clear cut as suggested in the Sanctions Order.  Judge Bufford implemented nearly contemporaneous changes in his practices regarding OTDs and original promissory notes for real estate relief-from-stay motions; while he issued an informational notice regarding the change in his promissory note requirements, he did not do so regarding the change in his OTD practice.  Additionally, Appellant had filed several real estate relief-from-stay motions with Judge Bufford prior to filing the first group of motions (*See* RJN, Ex. B), each of which was granted without the Bankruptcy Court issuing an OTD or imposing the stringent *In re Vin Vinhnee* authentication standard.  As discussed *supra*, before Appellant filed the second group of motions, the Bankruptcy Court granted the *In re Edwards* relief-from-stay motion without issuing an ODT or imposing the *In re Vin Vinhnee* authentication standard.  It was under these circumstances that Appellant filed the entire second group of motions,[9] believing the Bankruptcy Court had relaxed its ODT practice and evidentiary requirements or was exercising his discretion on a selective basis.  (Tr. of July 9 Hr'g re Sanctions, E.R. 1.25 at 2.)  These circumstances made it reasonable for Appellant to infer that the Bankruptcy

---

[9] Each of the second-group motions were filed within approximately thirty days of the Bankruptcy Court's granting of the *In re Edwards* relief-from-stay motion and before the second-group ODT was issued.  (Sanctions Order, E.R. Ex. 1.26 at App. A.)

Court's ODT practice was not a blanket requirement at the time Appellant filed the second group of motions.

On a related point, judges have broad discretion in their evidentiary rulings. *See In re Vin Vinhnee*, 336 B.R. at 443–44 ("Evidentiary rulings, including admissibility of electronic records, are reviewed for abuse of discretion.") (citing *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1011 (9th Cir. 1997); *United States v. Catabran*, 836 F.2d 453, 456 (9th Cir. 1988)). Similarly, authentication determinations "rest[] in the sound discretion of the trial court and is reviewed for abuse." *Id*. at 444 (citing *Sec. Farms*, 124 F.3d. at 1011). While it was clearly within Judge Bufford's authority to implement the *In re Vee Vinhnee* authentication standard for real estate relief-from-stay motions, it does not follow that Judge Bufford's requirements were clearly articulated to the parties and counsel practicing in his Court or that the *In re Vee Vinhee* evidentiary standard for relief-from-stay motions was a uniform standard throughout the bankruptcy courts in all proceedings. This is particularly true considering Judge Bufford's previous practice of granting relief-from-stay motions without issuing OTDs or imposing the *In re Vin Vinhnee* evidentiary standard. Ninth Circuit authority even suggests that the *In re Vin Vinhnee* evidentiary standard is beyond that which is normally required for relief-from-stay motions:

> Generally, the hearing on a motion for relief from stay is a *summary proceeding* that requires the bankruptcy court's action to be quick and is limited to determining whether "the creditor has a *colorable claim* to the property of the estate."

*In re Gould*, 401 B.R. 415, 425 (9th Cir. B.A.P. 2009) (citing *In re Luz Int'l, Ltd.*, 219 B.R. 837, 842 (9th Cir. B.A.P. 1998)) (emphasis added). *In re Vin Vinhnee* was not decided in the context of a summary relief-from-stay hearing, but a bench trial on the merits of the underlying Chapter 7 case. *In re Vin Vinhnee*, 366 B.R. at 440. As such, without a more definitive notice of the Bankruptcy Court's newly implemented

procedures, the record does not show that Appellant intentionally disregarded a court order.

In its Sanctions Order, the Bankruptcy Court alluded to the *In re Johnson* and *In re Autera* relief-from-stay motions, which were filed after the OSC hearing:

> Pite failed to learn its lesson [after the second group of motions]:   three months later, Pite appeared on two more occasions and withdrew motions on the hearing dates, after the court had again issued orders to produce its witnesses for testimony and had completed all of the work in preparation for the hearings.

(Sanctions Order, E.R. Ex. 1.26 at 3.)   The Bankruptcy Court presumably emphasizes these cases to support the notion that the Sanctions Order was a necessary deterrent for Appellant's "repetition of such conduct."  Fed. R. Bankr. P. 9011(c)(2).  These two cases, however, are better categorized as unfortunate coincidences, rather than acts of deliberate, negligent, or reckless conduct by Appellant.  Nothing in the record contradicts Appellant's position that (1) Appellant changed its practices for relief-from-stay motions circumstances to comply with Judge Bufford's unique requirements after filing the second group of motions; and (2) it filed *In re Johnson* and *In re Autera* with a good-faith and reasonable belief that the motions were to be heard before Judges Russell and Carroll, respectively, who presumably did not impose the same procedural and evidentiary rules as Judge Bufford.  As such, the Bankruptcy Court cannot reasonably justify the Sanctions Order on deterrence grounds.

Finally, this Court rejects the notion that a business decision to withdraw a motion is a legitimate basis for imposing sanctions.  During the OSC hearings, the Bankruptcy Court repeatedly expressed dissatisfaction with the declarant-witnesses' testimony on this issue, (Tr. of July 8 Hr'g re Sanctions, E.R. 1.24. at 7–8, 12, 22–24):

> The declarants who testified in court [at the OSC hearing] complained of the expense in bringing witnesses to court to

-19-

testify [at the relief-from-stay hearings].  The court finds that bringing the declarants to testify in court [at the relief-from-stay hearings] is not prohibitively expensive.  The motions here at issue each involved debts of several hundred thousand dollars.  The travel expenses of bringing a witness to testify would rarely exceed $1000. . . .  Expending $1000 (or even $2000) to pursue a claim of several hundred thousand dollars is clearly not prohibitive.  Indeed, such an expense barely exceeds the legal fees and costs for the relief from stay motion itself.

(Sanctions Order, E.R. Ex 1.26 at 6.)  The Bankruptcy Court's finding that "bringing the declarants to testify in court was not prohibitively expensive" is not relevant to the inquiry into improper purpose.  Nothing prevented Appellant's clients from withdrawing their relief-from-stay motions for the asserted reasons, particularly when the motions were unopposed, as they were here.  Further, the Bankruptcy Court cites no authority requiring Appellant's client to incur expenses—even those expenses the Bankruptcy Court deems negligible—which in turn would only augment the debt associated with already-encumbered properties.

On this record, Appellant's conduct does not appear to rise to the level of "abusive litigation activity" that FRBP 9011 was meant to protect against, namely conduct with intent "to harass or to cause unnecessary delay or needless increases in the cost of litigation."  Fed. R. Bankr. P. 9011(b)(1).  Moreover, as a general matter, the "persistent pattern of abusive litigation, *see Aetna Life Ins. Co.*, 855 F.2d at 1476, to which the Bankruptcy Court refers does not apply to the facts of this case.  In *Aetna Life Ins. Co.*, the court describes the potential for abusive litigation activity within the context of a single lawsuit.  *Id.*  In this case, however, Appellant filed a single relief-from-stay motion in connection with each of the subject cases, which distinguishes this case from the potentially "harassing and vexatious" conduct described in *Aetna Life Ins. Co*.  *Id*. at 1477.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> **b.      Appellant's Relief-From-Stay Motions Were Not Frivolous For Lack of Evidentiary Support**

The Bankruptcy Court held that "none of the twenty-one motions in the second group was supported by admissible evidence" in violation of FRBP 9011(b)(3). (Sanctions Order, E.R. Ex 1.26 at 7.)  The Bankruptcy Court specifically found that (1) Appellant did not begin its evidentiary investigation until after the second group of motions had been filed; and (2) the declarant-witness testimony "at the OSC hearing confirmed that the [relief-from-stay] motions lacked evidentiary support at the time" they were filed.  (*Id*.)  Appellant argues that the Bankruptcy Court clearly erred in its aforementioned findings, and this Court agrees.

As discussed *supra*, Judge Bufford's relief-from-stay evidentiary requirements were not clear cut:  Judge Bufford had a previous practice of granting relief-from-stay motions without requiring declarant testimony or the *In re Vin Vinhnee* authentication standard; and when Judge Bufford changed his practice, he did not definitively notify the parties and counsel before his court of those newly implemented procedures.  As such, this Court finds that Appellant conducted a reasonable evidentiary investigation for the relief-from-stay motions based on its reasonable—albeit incorrect—belief that the Bankruptcy Court did not have blanket procedures regarding its ODT practice and the *In re Vin Vinhnee* standard.

Additionally, at the OSC hearing, the Bankruptcy Court seemingly accepted Appellant's explanation that (1) it reasonably believed Judge Bufford's aforementioned procedures were not blanket requirements; and (2) upon realizing they were blanket procedures, it accordingly changed its internal procedures of filing relief-from-stay motions before Judge Bufford.  (Tr. of July 9 Hr'g re Sanctions, E.r. 1.25 at 19.) Appellant's explanation—considered together with the generally-accepted notion that a relief-from-stay hearing is a summary proceeding where the moving party need only show it has a colorable claim—leads this Court to find that Appellant satisfied FRBP 9011's "reasonable inquiry" mandate.   Appellant represents sophisticated corporate

clients—all of which were very familiar with general Chapter 7 and relief-from-stay procedures—and continuously apprised them of their relevant case information, including Judge Bufford's unique relief-from-stay procedural requirements.    Under these circumstances, it was reasonable for Appellant to rely on the clients' factual representations asserted in their respective relief-from-stay declarations and on the clients' initial contentions that it would proceed with the hearings despite Judge Bufford's ODT practice.  *See Bus. Guides, Inc. v. Chromatic Commc'ns Enterps., Inc.*, 498 U.S. 533, 549 (1991) (noting that "[q]uite often it is the client, not the attorney, who is better positioned to investigate the facts supporting a paper or pleading," which is particularly pertinent when a client is a large lending institution).

In sum, the record before this Court does not support a finding that Appellant's conduct was undertaken for an improper purpose or constituted "abusive litigation tactics."  Appellant satisfied FRBP 9011's reasonable inquiry requirements.  While Judge Bufford had every reason to feel frustrated by the roundabout manner in which Appellant apprised itself of the Bankruptcy Court's ODT and authentication requirements for real estate relief-from-stay motions, Appellant's conduct "was in neither purpose nor substance 'akin to contempt.'"  *See, e.g.*, *United Nat. Ins. Co.*, 242 F.3d at 1118.  As discussed in more detail *infra*, the Bankruptcy Court's factual findings were insufficient to support a finding of contempt of court.  Furthermore, Appellant's motion withdrawals prior to the hearing dates were actually consistent with the 21-day safe harbor provision of 9011—which allows a challenged motion to be withdrawn or appropriately corrected within the 21-day notice period.  By relying on clearly erroneous factual findings, the Bankruptcy Court abused its discretion in issuing FRBP 9011 sanctions.

## 2.    The Bankruptcy Court Abused Its Discretion In Issuing Sanctions Pursuant to Section 105(a) and Its Inherent Sanction Authority

Section 105(a) and inherent sanction authority are two distinct sources of authority and are not interchangeable.  *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003).  Section 105(a) "allows a court to remedy a violation of a specific order. . . .   The inherent

-22-

sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." *Id*. (citing *Fink v. Gomez*, 239 F.3d 989, 992–93 (9th Cir. 2001).

The Bankruptcy Court found that Appellant knowingly or recklessly filed the second group of motions with inadequate evidentiary support and with the improper purposes of delaying and increasing the costs of litigation and unnecessarily draining the court's time and resources.  (*See* Sanctions Order E.R. Ex. 1.26 at 8.)  The Bankruptcy Court concluded that Appellant filed the second group of motions in bad faith and thus that "sanctions are supported by § 105(a) and the court's inherent authority."  (*Id*.) Because Section 105(a) and inherent authority are distinct sources of sanctions authority, each is discussed separately in turn.

### a.   Sanctions Were Not Appropriate Under Section 105(a)

"The standard for finding a party in civil contempt [under Section 105(a)] is well settled:  The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.  The burden then shifts to the contemnors to demonstrate why they were unable to comply."  *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (quoting *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

The Bankruptcy Court's finding of bad faith due to the lack of evidentiary support and improper purpose is inadequate to support  sanctions pursuant to Section 105(a) for two reasons:  first, as discussed *supra*, the Bankruptcy Court clearly erred in finding that Appellant's second group of filings lacked evidentiary support and were in purpose or substance improper; and second, the Bankruptcy Court does not contend that Appellant violated a specific and definite order, and therefore Appellant's withdrawal of the motions prior to the hearings does not constitute a violation of any order.  As such, the Bankruptcy Court abused its discretion in relying on Section 105(a) in imposing sanctions.

1

2

**b.** **Sanctions Were Not Properly Imposed Under the Bankruptcy Court's Inherent Authority**

3   A bankruptcy court has the inherent power to impose sanctions for bad-faith

4   conduct. *In re Dyer*, 322 F.3d at 1196. This inherent authority is recognized in Section

5   105(a), which states:

6   No provision of [the Bankruptcy Code] providing for the

7   raising of an issue by a party in interest shall be construed to

8   preclude the court from, sua sponte, taking any action or

9   making any determination necessary or appropriate to enforce

10   or implement court orders or rules, or to prevent an abuse of

11   process.

12   11 U.S.C. § 105(a). By granting bankruptcy courts authority to "issue orders necessary

13   'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts

14   have the inherent power to sanction that . . . exists within Article III courts." *Rainbow*

15   *Magazine*, 77 F.3d at 284.

16   Inherent sanction authority is wide in scope and powerful in effect, and therefore

17   courts should exercise it with discretion and restraint. *Chambers v. NASCO, Inc.*, 501

18   U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "A primary aspect of that discretion

19   is the ability to fashion an appropriate sanction for conduct which abuses the judicial

20   process." *Id.* Accordingly, a court must make an explicit finding of bad faith or willful

21   misconduct. *Dyer*, 322 F.3d at 1196; *see also Primus Auto. Fin. Servs., Inc. v. Batarse*,

22   115 F.3d 644, 649 (9th Cir. 1997) ("We insist on the finding of bad faith because it

23   ensures that 'restraint is properly exercised' and it preserves a balance between protecting

24   the court's integrity and encouraging meritorious arguments." (citation omitted; quoting

25   *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989))).

26   A court reasonably finds bad-faith conduct where an attorney "knowingly or

27   recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of

28   harassing an opponent." *Id.* at 649 (9th Cir. 1997) (citations omitted). A court is also

justified in finding bad faith conduct if it finds that a party is "delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)).  Additionally, the court may find bad faith conduct and impose sanctions "against counsel who willfully abuse judicial processes." *Fink*, 239 F.3d at 991.  Overall, the standard for finding bad faith conduct is high, such that the conduct at issue must be more egregious than mere negligence or recklessness. *See Dyer*, 322 F.3d at 1196.

The Bankruptcy Court relied on the same facts in making an explicit finding of bad faith as it did in finding that Appellant was subject to sanctions under FRBP 9011.  For the reasons discussed above, the Bankruptcy Court's factual findings were clearly erroneous, and therefore the Bankruptcy Court abused its discretion in issuing sanctions based on its inherent authority.

## V.  <u>CONCLUSION</u>

In light of the foregoing, the decision of the Bankruptcy Court is REVERSED.

**IT IS SO ORDERED.**

DATED:  December 6, 2011

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

cc: U.S. Bankruptcy Court

-25-